COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

DONALD RUNNELS

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2010-5578
HONORABLE JOEL GERARD DAVIS, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**CONVICTION AND SENTENCE FOR SIMPLE BURGLARY AFFIRMED.
SENTENCE FOR THEFT LESS THAN $500.00 VACATED AND REMANDED
FOR DISPOSITION.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Donald Runnels**


**H. Todd Nesom**
**District Attorney**
**Joe Green**
**Assistant District Attorney**
**Post Office Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Donald Runnels**
**Avoyelles Detention Center, Dorm C**
**675 Government Street**
**Marksville, LA   70351**
**In Proper Person**

**AMY, Judge.**

The defendant was charged with simple burglary and theft less than $500.00. A jury convicted the defendant of simple burglary. For the simple burglary charge, the trial court sentenced the defendant to ten years at hard labor with three years suspended. The trial court also imposed four years of supervised probation, with conditions, and ordered the defendant to pay supervision and technology fees. For the theft less than $500.00 charge, the trial court sentenced the defendant to six months in the parish jail, to run concurrently with his simple burglary sentence. The defendant now appeals. For the following reasons, we affirm the defendant's sentence and conviction for the simple burglary charge. We vacate the defendant's sentence for the theft less than $500.00 charge and remand the matter to the trial court.

## Factual and Procedural Background

The defendant, Donald K. Runnels, was arrested after he was found to be in possession of various cleaning supplies and a shovel that belonged to a Pizza Hut in Oakdale, Louisiana. The State subsequently charged the defendant with simple burglary, a violation of La.R.S. 14:62, and theft less than $500.00, a violation of La.R.S. 14:67. A trial was held on the simple burglary count and a six-person jury unanimously convicted the defendant of that charge.

Thereafter, the State filed a habitual offender bill of information, although the habitual offender hearing was continued. Thus, the trial court imposed sentence on the underlying offenses. With regard to the simple burglary conviction, the trial court sentenced the defendant to ten years at hard labor, with three years suspended. The trial court also sentenced the defendant to four years of supervised probation, with conditions, and supervision and technology fees. With regard to the theft charge, the trial court sentenced the defendant to six months in the parish jail, to run concurrently with the sentence in his burglary conviction.

The defendant appeals, asserting through counsel that the evidence was insufficient to support his conviction. Additionally, the defendant has filed a pro se brief asserting various errors.

## Discussion

*Prematurity*

In his counseled brief, the defendant contends that this appeal is premature, as his habitual offender proceeding is still pending. However, La.Code Crim.P. art. 912(C)(1) permits a defendant to appeal from a judgment which imposes a sentence. Further, "[a]n appellate court therefore may not dismiss a timely and properly filed appeal on the grounds that the district court *may* vacate sentence and resentence the defendant on a pending multiple offender bill under La.R.S. 15:529.1." *State v. Gilbert*, 99-2338, p. 1 (La. 2/4/00), 758 So.2d 779, 779-80. Accordingly, we find that this appeal is not premature.

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record indicates that there is a misjoinder in the bill of information. The bill of information charges the defendant with simple burglary in violation of La.R.S. 14:62, which is a felony triable by jury, and theft less than $500.00 in violation of La.R.S. 14:67(B)(3), which is a misdemeanor not triable by jury. *See* La.Code Crim.P. arts. 779 and 782. Because the offenses are not triable by the same mode of trial, they should not have been charged in the same bill of information. *See* La.Code Crim.P. art. 493. However, the defendant waived that error as he did not file a motion to quash the bill of information based on the misjoinder. *See* La.Code Crim.P. art. 495. *See State v. Anderson*, 08-962 (La.App. 3 Cir. 2/4/09), 2 So.3d 622, *writ denied*, 09-518 (La. 11/20/09), 25 So.3d 786.

2

Further, we note that the appellate review of misdemeanors is typically by way of a writ of review rather than an appeal. La.Code Crim.P. art. 912.1. However, the defendant's brief addresses both the simple burglary charge and the theft less than $500.00 charge. We therefore decline to sever the misdemeanor conviction and will address it in the present appeal. *See State v. Williams*, 07-490 (La.App. 3 Cir. 10/31/07), 969 So.2d 744. *Compare State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286 (wherein a panel of this court severed a defendant's misdemeanor conviction from his appeal on two felony counts as the defendant made no specific arguments concerning the misdemeanor conviction), *writ denied*, 05-871 (La.12/12/05), 917 So.2d 1084.

With regard to the charge of theft less than $500.00, the trial court sentenced the defendant to six months in the parish jail on that count. However, as pointed out by the defendant in his brief, there is nothing in the record indicating that a verdict was rendered either by the jury or by the trial court on this count. Therefore, the defendant's sentence for theft less than $500.00 is vacated. *See* La.Code Crim.P. arts. 871(A) and 934(3).

Further, La.Code Crim.P. art. 819 provides "[i]f there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Although the defendant was charged with two counts—simple burglary and theft less than $500.00—he proceeded to trial and was convicted of only the simple burglary charge. Responding to an inquiry from this court, the Allen Parish Clerk of Court averred that with regard to the theft less than $500.00 charge, there is no transcript or minutes from a bench trial, nor is there a plea of guilty. Therefore, the case is remanded for disposition of the defendant's remaining charge. *See State v. Orbro*, 10-1289 (La.App. 3 Cir. 5/4/11), 64 So.3d 410 (citing *State v.*

*Hypolite*, 04-1658 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381), *writ denied*, 11-1105 (La. 11/14/11), 75 So.3d 940.

*Sufficiency of the Evidence*

The defendant contends, both in his counseled brief and his pro se brief, that the evidence is insufficient to support his conviction. He argues that the evidence is insufficient to prove that he had specific intent to commit a theft. The defendant notes that he presented evidence indicating that the items in question were not located in Pizza Hut's shed, but were next to the dumpster. He also contends that the State's failure to introduce photographs taken the day of the alleged offense is error.

An appellate court should address sufficiency of the evidence claims first. *State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204. The supreme court reiterated the appellate review of sufficiency of the evidence claims in *State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86, stating:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

The crime of simple burglary is defined in La.R.S. 14:62 as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60." Additionally, "[t]hough intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances."

4

*State v. Robinson*, 29,488, p. 3 (La.App. 2 Cir. 6/18/97), 697 So.2d 607, 609 (citing

*State v. Kahey*, 436 So.2d 475 (La.1983)), *writ denied*, 97-1845 (La. 12/12/97), 704

So.2d 1200.

The State offered the testimony of several witnesses to prove that the defendant

entered a shed belonging to Pizza Hut without authorization. According to the record,

an employee of Pizza Hut, Kathy Swoope, noticed a truck drive around to the back of

the Pizza Hut before the store opened for the day. When the truck did not return

shortly, she stepped outside to investigate. Ms. Swoope testified that she saw a green

truck parked next to the sheds[1] in the rear of the Pizza Hut parking lot. According to

Ms. Swoope:

> a man was standing inside the door and he was holding up a two liter
> Pepsi and he was talking to a lady that was in the truck and he was like,
> "They have sodas and stuff back here." . . . He put it down. And he
> reached into the box and we keep our uniform shirts and stuff back there.
> And he picked them up and he said, "They have clothes back here too."
> And when he turned around, I was walking towards the truck. And he
> just looked at me and he dropped the shirts. And he looked at me and he
> said, "They got plates and stuff back here." I'm like, "That's for Pizza
> Hut." And he turned around. And I walked around the truck and I
> looked . . . . It had a shovel in the back of the truck and he had like a
> thing with some cleaning stuff in it, but it was halfway covered up a little
> bit. So he just got in the truck and I walked in the shed and I looked back
> and he backed up and left."

Although there was conflicting testimony about whether the lock on the shed

door was completely functional,[2] Ms. Swoope testified that the shed door was closed

when she arrived at work and that opening the shed door required some effort.

Further, Ms. Swoope stated that she did not give the defendant permission to be in the

shed. Ms. Swoope reported the theft and gave a description of the truck and its

---

[1] The record indicates that there were two storage sheds at the rear of the Pizza Hut parking lot. Cheryl Faulks, another employee of Pizza Hut, testified that cleaning supplies, uniforms, Coke products, and plates were stored in the shed at issue herein.

[2] According to Ms. Swoope, part of the locking mechanism had been broken. However, she also testified that the shed door was kept closed and that "you had to really walk up to it to actually look at it to see if it was broken off. . . . You had to actually pull it for it to come open." Cheryl Faulks testified that the lock was functional.

occupants. Another employee of Pizza Hut, Cheryl Faulks, testified that the shed door is always kept closed and that the shed is "usually locked."

In his pro se brief, the defendant contends that the shed door was open and that he entered the shed because he was chasing what appeared to be some money through the parking lot. The defendant's fiancée, Dawn Dorman, testified that they saw some money flying along the road and into the parking lot. Ms. Dorman also testified that the shed door was open and that the money blew into the shed. However, Ms. Dorman also testified that the defendant went into the shed and that no one gave them permission to do so.

The State also offered evidence that the defendant took items from the shed, including cleaning supplies and a shovel. Ms. Swoope testified that she saw a shovel and some cleaning items in the back of the defendant's truck. Further, Ms. Swoope noted that she could tell that items were missing from the shed. Ms. Faulks testified that she was in charge of inventory and that she determined that the items recovered from the defendant's truck came from Pizza Hut. Ms. Faulks stated that the bottle of Weed-Be-Gone was a new jug and that she had purchased the shovel about a month before this incident.

Lieutenant Buford Johnson of the Oakdale Police Department testified that he located the truck in the parking lot at Wal-Mart. When the defendant returned to the truck, Officer Shawn Odom and Lieutenant Johnson placed him under arrest. Officer Odom testified that she saw a shovel and some cleaning supplies in the back of the defendant's truck. Further, she testified that when she questioned the defendant about those items, he stated that he had just left Pizza Hut and that he had taken the shovel and cleaning supplies. Officer Odom also testified that the defendant indicated that he had gotten those items out of the shed. The State also offered into evidence a "Writ of Voluntary Statement" that the defendant sent to the trial court on Ms. Dorman's

6

behalf. Therein, the defendant states that he "committed an offense of <u>unauthorized use</u>," that Ms. Dorman had "no involvement in the act of taking a shovel or 3 separate bottles of household cleaner unlawfully," and that "he put the cleaners and shovel in the truck."

At trial, the defendant contended that the shovel and the cleaning supplies were located next to a dumpster and that he thought they were trash. Defense counsel argued that the defendant was guilty of "dumpster diving." Ms. Dorman testified that she saw the defendant bend down and pick up the shovel and cleaning supplies, and that he did not get them out of the shed. She also stated that they were by the dumpster. According to Ms. Dorman, the dumpster was only five feet or "something like that" from the sheds.

However, Ms. Faulks testified that the dumpster is about fifty feet from the sheds and that it has never been closer. According to Ms. Faulks, their inspectors require that the dumpster be "so far away" from the building and the sheds because there are "ready-to-use" products in that vicinity. Further, both Ms. Faulks and Ms. Swoope testified that items were never stored by the dumpster. Ms. Swoope testified that, with the exception of the degreaser, the used bottles of cleaning supplies would be thrown away. Ms. Swoope's testimony was that employees were not allowed to leave anything outside of the dumpster because it was "an automatic write-up."

Based on our review, the State presented sufficient evidence to prove that the defendant entered a shed belonging to Pizza Hut without authorization. Further, there is sufficient evidence to support a conclusion that the shovel and cleaning supplies taken by the defendant were not trash but were located inside the shed. Accordingly, the record contains sufficient evidence when viewed in the light most favorable to the prosecution that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

With regard to the defendant's assertion that it was error for the State to fail to submit photographs taken the same day as the incident, we note that the jury was free to accept or reject the witnesses' testimony concerning the location of the shed in relation to the dumpster and whether or not the door to the shed was open. Further, there is no requirement that the State produce physical evidence in support of a conviction. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

This assignment of error is without merit.

*Pro Se Brief*

The defendant has also filed a pro se brief asserting numerous alleged errors. Those assertions can be categorized into allegations of ineffective assistance of counsel; improper jury instructions; misconduct by the State; that witnesses were improperly allowed to testify from their notes; bias on the part of the trial court; and that his sentence is excessive.

*Ineffective Assistance of Counsel*

The defendant asserts numerous instances in which he claims that his trial counsel was ineffective. Although a claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief, where the record contains sufficient evidence to decide the issue and the issue is raised by an assignment of error on appeal, the appellate court may consider the issue. *State v. Christien*, 09-890 (La.App. 3 Cir. 2/3/10), 29 So.3d 696. In assessing ineffective assistance of counsel claims, the defendant must show that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Washington*, 491 So.2d 1337, 1338 (La.1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)).

8

The defendant asserts that his trial counsel was ineffective in that he: emphasized certain words and gestures during opening argument; did not ask "important questions of each witness" and disregarded the defendant's wishes in this regard; failed to subpoena witnesses, most notably Ms. Dorman; failed to inform the jury that Ms. Dorman is mentally handicapped; failed to make numerous objections;[3] disregarded the defendant's instructions regarding additional questions for witnesses and closing argument; failed to impeach Ms. Swoope regarding her testimony about the location of items in the shed and her later testimony that she did not realize that the Weed-Be-Gone was missing until it was brought back by the police; that trial counsel gave his own jury instructions to the jury; and failed to inform the trial court that the defendant filed a pro se motion to appeal. Even if the court assumed that these alleged instances fell below an objective standard of reasonableness, the defendant does not demonstrate what prejudice he suffered as a result. Further, the defendant offers no other indication that there is a reasonable probability that, but for these alleged unprofessional errors, the outcome of the trial would have been different.

Additionally, the defendant contends that the arraignment proceedings were irregular and that his trial attorney failed to object to them. The defendant argues that he did not personally enter a plea, that the bill of information was not read to him, and that he did not waive formal reading of the bill of information. Louisiana Code of Criminal Procedure Article 555 states:

> Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without

---

[3] The defendant alleges that his trial counsel failed to make numerous objections, including objections to: several of the State's exhibits; the State interrupting Ms. Dorman's testimony; "false information"; the scope of opening arguments; irrelevant questions asked by the State; the use of the word "fled"; references to a "back door"; and the use of notes by the State's witnesses.

9

objecting thereto, and it shall be considered as if he had pleaded not guilty.

The minutes from the defendant's arraignment indicate that the defendant was present in court, was represented by counsel, and entered pleas of not guilty. Our review of the record does not indicate that the defendant objected to the bill of information. Even assuming that the defendant's trial attorney's conduct was deficient in some fashion, the defendant does not indicate how he was prejudiced by that deficiency.

The defendant asserts that his trial attorney erred in failing to object to the bill of information and that the bill of information was improper. Count one of the bill of information was read at the beginning of the defendant's trial.[4] Louisiana Code of Criminal Procedure Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Based on our review of the bill of information, we find that it comports with the requirements of Article 464. Further, we observe that La.Code Crim.P. art. 765 states that the reading of the indictment is part of the normal order of trial. Thus, we find that the defendant has failed to show how his trial counsel was deficient in failing to

---

[4] The bill of information states:

Count #1: ON OR ABOUT OCTOBER 10, 2010, IN THE PARISH OF ALLEN, DONALD K RUNNELS committed the offense of R.S. 14:62 SIMPLE BURGLARY, by the unauthorized entry of the property of another located at a storage unit, belonging to Pizza Hut Oakdale, with the intent to commit a felony or a theft therein.

Count #2: ON OR ABOUT OCTOBER 10, 2010, IN THE PARISH OF ALLEN, DONALD K RUNNELS committed the offense of R.S. 14:67 THEFT by the misappropriation or taking of property belonging to Pizza Hut, wherein the value amounts to under $500.

object to the reading of the bill and what prejudice, if any, he suffered by this alleged deficiency.

Further, the defendant contends that his trial counsel failed to call any witnesses and failed to reserve the right to recall witnesses. The record indicates that the defendant's trial counsel called Lieutenant Johnson as a defense witness. Further, the defendant's trial counsel subjected the State's witnesses to cross-examination. Notwithstanding the defendant's assertion that he failed to reserve the right to recall any witnesses, the record indicates that trial counsel recalled Ms. Swoope to the stand. Accordingly, the defendant has failed to show how his trial counsel was deficient with regard to these allegations.

The defendant further contends that his trial counsel failed to object to the testimony of Ms. Faulks on the basis that she was not on the State's witness list and that he failed to impeach Ms. Faulks. The defendant contends that her testimony caused "irrepairable injury." "Louisiana jurisprudence has also consistently held a defendant is generally not entitled of right to the names, addresses, and telephone numbers of witnesses in the absence of extraordinary circumstances." *State v. Harper*, 10-356, p. 10 (La. 11/30/10), 53 So.3d 1263, 1270. However, if the trial court determines that "peculiar and distinctive" reasons exist indicating that fundamental fairness dictates discovery, disclosure may be justified. *Id.* at 1271. Our review of the record does not indicate that the defendant requested the names of the State's witnesses. Thus, the defendant has failed to prove that his trial attorney's conduct was deficient.

The defendant also asserts that his trial counsel failed to inform the jury of alternate theories of the crime, including that another person might have broken into the shed before the defendant arrived and that Ms. Swoope might have missed the bottles by the dumpster when she checked. However, whether another person broke

11

into the shed would not negate the State's evidence that the defendant entered the shed without authorization. Further, the defendant's trial counsel questioned Ms. Dorman about the location of the stolen items and attempted to establish that they were located near the dumpster and not the shed. Thus, the defendant fails to establish how his trial counsel was deficient.

Thus, we find no merit to the defendant's assertions that his trial counsel was ineffective.

*Use of Notes by Witnesses*

The defendant also contends that the trial court erred in permitting witnesses to take the stand with notes. He takes issue with Lieutenant Johnson's use of Officer Odom's report during his testimony. Louisiana Code of Evidence Article 612(B) provides, in relevant part, that "[i]n a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying." It is immaterial who prepared the report, as long as the witness can testify to the fact after refreshing his or her memory because the testimony of the witness is the evidence, not the writing itself. *State v. Young*, 552 So.2d 669 (La.App. 2 Cir. 1989).

Lieutenant Johnson was called as a defense witness. The transcript of his testimony indicates that, after posing a few questions, the defendant's attorney questioned Lieutenant Johnson about his reliance on Officer Odom's report. The record also indicates that, after a bench conference, counsel requested that Lieutenant Johnson "not rely on those notes" and "testify from [his] own recollection of this particular incident." Lieutenant Johnson then stated that he did not "remember enough of it to testify like that." However, defense counsel elicited that Lieutenant Johnson remembered going to the Oakdale Wal-Mart, pulling the defendant over, that Officer Odom spoke with the defendant, that there were "cleaning supplies. As to

exactly what kind, I don't know, and there was a shovel" in the bed of the defendant's truck, and that the defendant was arrested.

The record reveals that Lieutenant Johnson refreshed his memory from the report and testified with regard to what he recalled. This assignment of error is without merit.

*Improper Jury Instructions*

The defendant also contends that the trial court gave improper jury instructions. The defendant specifically points to the trial court stating in *voir dire* that "[t]he defendant, Mr. Runnels, is presumed by law to be innocent until each element of the crime necessary to constitute his guilt is proven *by* a reasonable doubt." (Emphasis added). The defendant also objects to the trial court's instructions that "[w]hile the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt." Further, the defendant alleges that the trial court's failure to include the phrase "the responsive verdicts for" in the jury instructions was confusing, that the jury instructions left the impression that a hung jury was unacceptable, and that it was improper to instruct the jury to reexamine their views. However, La.Code Crim.P. art. 801(C) states, in pertinent part, that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection." A review of the record reflects that there were no objections to the trial court's jury instructions. Accordingly, the defendant failed to preserve this issue for review. *See State v. Lee*, 02-1793 (La.App. 4 Cir. 4/2/03), 844 So.2d 970, *writ denied*, 03-1247 (La. 10/10/03), 855 So.3d 330.

*Misconduct by the State*

The defendant asserts that the State committed prosecutorial misconduct by interrupting a witness repeatedly, allowing witnesses to testify using notes, embellishing the evidence and adding details to the witnesses' reports, and possibly fabricating the police report introduced into evidence. The defendant further asserts that this alleged misconduct "may have been a combined effort between both the States Attorney and the defense council [sic]." Louisiana Code of Civil Procedure Article 841(A) states that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. . . . It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor." A review of the record indicates that the defendant failed to object to any of the alleged instances of prosecutorial misconduct. Accordingly, the defendant failed to preserve this issue for review. *See State v. Jones*, 09-1453 (La.App. 3 Cir. 8/11/10), 45 So.3d 1136, *writs denied*, 10-504, 10-2132 (La. 2/18/11), 57 So.3d 328, 330; *State v. Jackson*, 43,139 (La.App. 2 Cir. 3/26/08), 979 So.2d 678, *writ denied*, 08-952 (La. 12/12/08), 997 So.2d 560.

*Alleged Bias*

The defendant also contends that the trial court was biased against him, as evidenced by the trial court's statement to the defendant that "[s]ir, you're going to have to control yourself or we'll remove you from the courtroom." The defendant also contends that the trial court's knowledge of the defendant's other pending criminal charges caused the trial court to be biased against him.

The fifth circuit addressed the trial court's responsibility to act as a neutral arbiter in *State v. Pittman*, 04-705, pp. 3-4 (La.App. 5 Cir. 12/28/04), 892 So.2d 641, 643, *writ denied*, 05-228 (La. 5/6/05), 901 So.2d 1094, stating that

14

"[e]ssential to the concept of a fair trial is the requirement of complete neutrality on the part of the presiding judge.' *State v. Johnson*, 438 So.2d 1091, 1101 (La.1983). . . . . When a trial judge gives the appearance of abandoning his role as a neutral arbiter, a new trial is required so as to afford the defendant a fair opportunity to have the jury decide his guilt or innocence. *State v. Duplessis*, 457 So.2d 604, 605 (La.1984).

With regard to the defendant's allegation that the trial court's knowledge of his other pending charges resulted in bias, the record indicates that, at sentencing, the trial court referenced the defendant's criminal convictions from 1996 and 1985 and made no mention of the defendant's other pending charges. In imposing sentence, the trial court may consider the defendant's criminal history, including both arrests and convictions. *State v. Williams*, 96-37 (La.App 3 Cir. 6/26/96), 677 So.2d 692. With regard to the defendant's other alleged evidence of bias, on one instance, the trial court instructed the defendant to control his behavior. A trial court "has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La.Code Crim.P. art. 17. *See also State v. Washington*, 322 So.2d 185 (La.1975).

Based on our review of the record, we find nothing that would indicate that the trial court abandoned its role as a neutral arbiter. This assignment of error is without merit.

*Excessiveness of Sentence*

In his pro se brief, the defendant also asserts that his sentence is excessive. The defendant points to a two-year sentence imposed in another simple burglary case in support of this claim.

Although the defendant filed numerous motions contesting the jury's guilty verdict, there is no motion for reconsideration of sentence contained in the record. When a defendant does not file a motion to reconsider sentence, the appellate court is limited to the bare claim that the defendant's sentence is constitutionally excessive.

*State v. Asad*, 38,040, 38,499 (La.App. 2 Cir. 4/7/04), 870 So.2d 455. In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La. 2/1/02), 808 So.2d 331, this court addressed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

A sentence within the statutory limits may still be reviewed for constitutional excessiveness. *State v. Lewis*, 09-783 (La.App. 5 Cir. 5/28/10), 43 So.3d 973 (citing *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1). Further, in considering whether a sentence is constitutionally excessive, the appellate court "may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes." *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Louisiana Revised Statutes 14:62(B) provides that "[w]hoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both." On the simple burglary conviction, the trial court sentenced the defendant to ten years at hard labor with three years suspended. The trial court also imposed four years of

supervised probation, with conditions, and ordered the defendant to pay supervision and technology fees.

The pre-sentencing investigation indicates that the defendant has prior convictions dating back to 1985, which include cultivation of marijuana, seven counts of simple robbery, unauthorized use of a moveable, and disturbing the peace by public intoxication. At the time of sentencing, the defendant was 46 years old and contended that being incarcerated would be a hardship on his family. The record reveals that the trial court discussed the defendant's criminal record and found that the defendant did not appreciate the seriousness of his crime. The trial court also found that the defendant was in need of incarceration and that there was an undue risk that if he was given a suspended sentence that he would commit another crime. Further, the second circuit upheld a ten year sentence for simple burglary where the defendant, a multiple offender, broke into a car and stole a pool cue and case, CDs, and a CD visor case. *See State v. Thompson*, 46,473 (La.App. 2 Cir. 9/21/11), 72 So.3d 978, *writ denied*, 11-2159 (La. 3/23/12), 85 So.3d 88.

Based on our review of the record, the defendant's sentence is not so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals. Thus, we find no abuse of the trial court's wide sentencing discretion.

This assignment of error is without merit.

### DECREE

The conviction and sentence of the defendant, Donald K. Runnels, for simple burglary, a violation of La.R.S. 14:62, are affirmed. The defendant's sentence for

theft less than $500.00, a violation of La.R.S. 14:67, is vacated and this case is

remanded to the trial court for disposition of that charge.

**CONVICTION AND SENTENCE FOR SIMPLE BURGLARY AFFIRMED. SENTENCE FOR THEFT LESS THAN $500.00 VACATED AND REMANDED FOR DISPOSITION.**